In re ELECTRIC MACHINERY ENTERPRISES, INC.,
Debtor.

No. 8:03–bk–11047–MGW.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

July 6, 2007.

David S. Jennis, Jennis Bowen & Brundage, PL, Tampa, FL, for Debtor.

Edward J. Comey, Maria C. Ramos, Shumaker Loop & Kendrick, LLP, Tampa, FL, for Amwest.

*MEMORANDUM DECISION AND ORDER GRANTING DEBTOR'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO POST–PETITION ATTORNEYS' FEES*

MICHAEL G. WILLIAMSON,
Bankruptcy Judge.

The majority of courts have held that an unsecured creditor is not entitled to collect post-petition attorneys' fees, costs, and

other similar charges—even if there is an underlying contractual right to do so. Amwest Surety Insurance Company ("Amwest") seeks to recover attorneys' fees and costs incurred post-petition as part of its unsecured claim against the Debtor, Electric Machinery Enterprises, Inc. ("Debtor"). In keeping with the majority view, the Debtor's objection to Amwest's claim for attorneys' fees incurred post-petition will be sustained.

## Procedural Background

Amwest was a surety that issued a subcontractor performance bond ("Bond") on behalf of a contractor ("Contractor") on a construction project. As an accommodation to the Contractor who procured the Bond, the Debtor executed an indemnity agreement ("Indemnity Agreement") in favor of Amwest agreeing to indemnify Amwest from any losses incurred with respect to the Bond. The Contractor defaulted in its obligation to pay a subcontractor obligee, who thereafter sued and obtained a judgment ("Judgment") against the Contractor and Amwest for $432,471.16.

Amwest has filed an unsecured proof of claim ("Amwest's Claim") in the Debtor's chapter 11 case for the amount of the Judgment, together with attorneys' fees incurred both before and after the filing of the Debtor's bankruptcy petition for fees in connection with collection of the Judgment—including substantial amounts incurred in connection with the litigation of the Debtors' objection to Amwest's Claim.

## Issue Presented

Whether a creditor holding a totally unsecured claim is entitled to attorneys' fees, costs and other charges that were incurred post-petition, based on an attorney fee provision contained in the contract giving rise to the unsecured claim.

## Conclusions Of Law

This Court has jurisdiction of this matter under 28 U.S.C. sections 157 and 1334(b). This is a core proceeding pursuant to 28 U.S.C. section 157(b)(2)(B).

The majority of courts that have considered whether an unsecured creditor is entitled to recover attorneys' fees and other post-petition costs and charges as part of its unsecured claim have concluded that unsecured and undersecured creditors are not entitled to recover post-petition attorneys' fees and similar costs. *See In re Hedged–Investments Associates, Inc.,* 293 B.R. 523 (D.Colo.2003); *In re Loewen Group, Int'l, Inc.,* 274 B.R. 427 (Bankr. D.Del.2002); *In re Pride Companies, L.P.,* 285 B.R. 366 (Bankr.N.D.Tex.2002); *In re Saunders,* 130 B.R. 208 (Bankr.W.D.Va. 1991); *In re Sakowitz, Inc.,* 110 B.R. 268 (Bankr.S.D.Tex.1989); *In re Canaveral Seafoods, Inc.,* 79 B.R. 57 (Bankr.M.D.Fla. 1987); and *In re Marietta Farms, Inc.,* 2004 WL 3019360 (Bankr.D.Kan. Nov.15, 2004).

There are four primary reasons why courts have concluded that an unsecured creditor is not entitled to attorneys' fees, costs and other charges. Each of these reasons mandates the conclusion that post-petition attorneys' fees should not be allowed as part of an unsecured claim. First, a number of courts have focused on the plain language of section 506(b) and applied the legal maximum of *expressio unius est exclusio alterius* to hold that unsecured creditors are not entitled to post-petition attorneys' fees and costs. *See, e.g., In re Pride Companies,* 285 B.R. at 372. In so ruling, these courts have focused on the clear language of section 506(b) of the Bankruptcy Code that provides that *"[t]o the extent* that an allowed secured claim [is oversecured], *there shall be allowed* to the holder of such claim, interest ... and any reasonable fees, costs

and charges." 11 U.S.C. § 506(b) (emphasis added). The emphasized language of section 506(b) demonstrates the congressional intent to create an exception to the general rule that claims are to be determined as of the petition date, exclusive of post-petition interest, attorneys' fees, and other charges. The use of the words "to the extent" a claim is oversecured, and "there shall be allowed" interest and fees, mandates the conclusion that in all other circumstances, post-petition interest, attorneys' fees, and charges shall not be allowed. These courts have concluded that if Congress intended for unsecured creditors to receive post-petition attorneys' fees, then it would have done so explicitly by authorizing unsecured creditors to collect fees under section 506(b). *See In re Pride Companies*, 285 B.R. at 372 ("statutory construction and logic compel the conclusion that unsecured creditors may not recover post-petition attorneys' fees"); *In re Hedged–Investments*, 293 B.R. at 526 (the language of 506(b) "demonstrates Congressional intent to disallow the recovery of post-petition fees and costs by creditors whose claims are not oversecured").

The second ground generally cited by courts to conclude that unsecured creditors are not entitled to post-petition attorneys' fees and costs is that the Supreme Court's opinion and reasoning in *United Savings Ass'n v. Timbers*, 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988), requires the conclusion that unsecured creditors are not entitled to collect attorneys' fees and costs. In *Timbers*, the Supreme Court concluded that because section 506(b) permitted post-petition interest to be paid only out of an equity cushion, an undersecured creditor who had no such equity cushion fell within the general rule of disallowing post-petition interest. Courts that rely on *Timbers* to disallow post-petition attorneys' fees and costs reason that the rationale applies equally to

the disallowance of post-petition attorneys' fees and costs to unsecured or undersecured creditors. *See, e.g., Loewen Group*, 274 B.R. at 444 ("the *Timber's* rationale applies equally for post-petition fees and costs"); *In re Saunders*, 130 B.R. at 210.

Third, the courts that disallow post-petition attorneys' fees and costs to unsecured creditors also rely on the plain language of section 502(b) of the Bankruptcy Code. Section 502(b) of the Bankruptcy Code provides that "if an objection to claim is filed, the court shall determine the amount of such claim in lawful currency of the United States *as of the date of the filing of the petition* and shall allow such claim in such amount." (Emphasis added). These cases generally conclude that the time for determining the amount of a claim is "as it existed as of the time of the filing of the case, without the inclusion of post-petition interest, attorneys' fees or costs unless the claim is oversecured where such amounts would be allowed under section 506(b)." *In re Sakowitz*, 110 B.R. at 271; *In re Waterman* 248 B.R. at 573.

Finally, courts adopting the majority view consider the equitable considerations and policy of providing equality of distribution among similarly situated creditors according to the priorities set out in the Bankruptcy Code. That is, a prime policy of the bankruptcy law, established long ago, is "to secure equality among the creditors of a bankrupt." *Boese v. King*, 108 U.S. 379, 385–86, 2 S.Ct. 765, 27 L.Ed. 760 (1883). The Supreme Court has continued to apply this policy through the years. *See, e.g., Clarke v. Rogers*, 228 U.S. 534, 548, 33 S.Ct. 587, 57 L.Ed. 953 (1913); *Young v. Higbee*, 324 U.S. 204, 210, 65 S.Ct. 594, 89 L.Ed. 890 (1945); *Union Bank v. Wolas*, 502 U.S. 151, 161, 112 S.Ct. 527, 116 L.Ed.2d 514 (1991). To find otherwise would permit certain types of unsecured creditors, typically holders of

contract claims under agreements with attorneys' fee provisions, to recover their fees while other unsecured creditors (tort claimants and trade creditors) would not be able to recover fees as part of their unsecured claim. *See In re Pride Companies,* 285 B.R. at 373–374 (principles of equitable distribution "should bar enforcement of contractual provisions that would permit one creditor—and not others—to charge the estate with legal expenses associated with a proceeding before the Bankruptcy Court").

The Court adopts the majority rule for all of the reasons stated above. Moreover, while the Supreme Court recently declined to express an opinion on whether unsecured creditors are entitled to post-petition attorneys' fees in a case under the Bankruptcy Code, *Travelers Casualty & Surety Co. of America v. Pacific Gas & Elec. Co.,* — U.S. ——, ——, 127 S.Ct. 1199, 1208, 167 L.Ed.2d 178 (2007), existing Supreme Court precedent under pre-Code law supports the majority view. Specifically, in *Randolph v. Scruggs,* 190 U.S. 533, 23 S.Ct. 710, 47 L.Ed. 1165 (1903), the Supreme Court formulated the requirement of "benefit to the estate" for the allowance of unsecured creditors' contract claims for post-petition legal fees. As stated by Justice Holmes for the Court, "We are not prepared to go further than to allow compensation for [legal] services which were *beneficial to the estate.*" 190 U.S. at 539, 23 S.Ct. 710 (emphasis added). The principle established by *Randolph v. Scruggs* was consistently adhered to by the courts in cases under the Bankruptcy Act. *See Saper v. John Viviane & Son, Inc.,* 258 F.2d 826, 828 (2d Cir.1958) ("[A]s a general rule no compensation or reimbursement can be had unless a tangible benefit has been conferred on the estate to the advantage of the creditors as a whole."); *In re Friedman,* 232 F.2d 151 (2d Cir.1956); *In re Solar Mfg. Corp.,* 206 F.2d 780, 781 (3d

Cir.1953) (the work of attorneys for creditors "must be at the expense of their clients unless it is in some manner beneficial to the estate"); *Guerin v. Weil, Gotshal & Manges,* 205 F.2d 302, 304 (2d Cir. 1953) (In the absence of benefit to the estate, "the bankruptcy court lacks power to grant, and the policy of the [Bankruptcy] Act is against, compensation not expressly provided for by the Act."); *Matter of Sapphire Steamship Lines, Inc.,* 509 F.2d 1242, 1245 (2d Cir.1975).

The Court disagrees with Amwest's contention that the Eleventh Circuit implicitly recognized an unsecured creditor's entitlement to attorneys' fees in *In re Welzel,* 275 F.3d 1308 (11th Cir.2001). To the contrary, *Welzel* did not address the issue of whether an unsecured creditor is entitled to post-petition attorneys' fees and costs, nor is there any implication that can be drawn from the decision that would apply to this issue. The issue addressed in *Welzel* was whether an oversecured creditor would be entitled to attorneys' fees and costs pursuant to an underlying loan agreement and state statute where the amount of fees and costs were not reasonable. In the Eleventh Circuit's words, "the point at issue concerns whether the Bankruptcy Court must determine if [the creditor's] contractually set fee constitutes 'reasonable fees' under section 506(b) or whether [the creditor] has a right to the entire fees *because they vested pre-petition.*" *Id.* (emphasis added). In other words, the *Welzel* decision dealt with what portion of an oversecured creditor's attorneys' fees (whether incurred pre-petition or after the filing) should be included as part of its secured claim under section 506(b).

In resolving that issue, the Eleventh Circuit determined that only the reasonable fees of an oversecured creditor would be allowed as a secured claim under

506(b), while any portion of pre-petition attorneys' fees that were not reasonable would only be allowed as an unsecured claim. *Welzel*, 275 F.3d at 1313. In determining whether fees were reasonable, the Eleventh Circuit also noted that "even if contractually set attorneys' fees owed to over-secured creditors are enforceable under state law because they are vested and comply with state notice procedure, it does not follow that the fees are *per se* reasonable under the Bankruptcy Code. This demonstrates, in turn, that 11 U.S.C. § 506(b) adds a new level of scrutiny to fee arrangements that goes beyond state law requirements." Nothing in *Welzel* implies that the Eleventh Circuit would allow post-petition fees to an unsecured creditor in an insolvent estate. In fact, the court in *Pride Companies* noted that the Eleventh Circuit's ruling in *Welzel* construing the relationship between sections 506 and 502 of the Bankruptcy Code "further supports the majority view" that an unsecured creditor has no right to recover post-petition attorneys' fees. *In re Pride Companies*, 285 B.R. at 375, n. 4.

Furthermore, the Court is particularly mindful of the practical impact a contrary ruling would have on the administration of a bankruptcy case. There would be no finality to the claims process as bankruptcy courts would constantly have to revisit the issue of the amount of claims to include ever-accruing attorneys' fees. The "cash registers" would ring on a daily basis, as attorneys for unsecured creditors that were active in the case would continually be filing new claims or seeking to reconsider previously allowed claims in order to add post-petition attorneys' fees and costs. Essentially, there could be no finality to the claims resolution process if the ever-accruing fees and costs attendant to the representation of unsecured creditors were allowed as part of an unsecured claim.

This problem is especially heightened in chapter 11 cases, which not only deal with the two-party disputes involved in the claims resolution process, but also require the adjudication of numerous bankruptcy-related separate proceedings that affect all unsecured creditors as a group and often do not affect the allowance of the individual claims of the creditors. These separate proceedings are often contested matters (governed by Rule 9014 of the Federal Rules of Bankruptcy Procedure) which, by way of example, include stay relief, use of cash collateral, sales of property of the estate, authority to borrow, assumption and rejection of executory contracts, appointment of a trustee, and the process of negotiating and confirming a plan of reorganization. 11 U.S.C. §§ 362, 363, 364, 365, 1104, 1121–1129. As Judge Walsh noted in *Loewen Group*, "[t]his rule [disallowing post-petition interest, costs and attorneys' fees] avoids the administrative inconvenience of continuous re-computation of claims and prevents certain creditors from profiting at the expense of others solely as a result of the delay in post-petition repayment caused by operation of law." 274 B.R. 427, 443. The practical consequences of such a result would be disastrous for the administration of the bankruptcy system. The administrative inconvenience this would cause in a chapter 11 case would be intolerable.

Accordingly, the Court declines to follow the minority view as articulated in *In re New Power Co.*, 313 B.R. 496 (Bankr. M.D.Ga.2004) and in *In re Fast*, 318 B.R. 183 (Bankr.D.Colo.2004). In declining to follow *New Power* and *Fast*, the Court notes that those cases involved solvent estates where any surplus would be distributed to the debtor. The Court also notes the comments of Judge Brooks in *In re Fast*, who did follow *New Power* in the context of a solvent estate but did so with some trepidation:

"So as not to create an unsecured-or under secured-creditor feeding frenzy, the facts and circumstances of this case are *extremely* unusual, *perhaps* unprecedented. During this Judge's time on the bench, only a bare handful of Chapter 7 cases have resulted in distribution to all creditors and a distribution to the debtor ... It is the confluence of the various features of this case that result in the conclusions reached by the court with respect to interest and attorneys' fees." *Fast,* 318 B.R. at 194 n. 9 (emphasis in original). This case presents an entirely different situation in that the Debtor was clearly insolvent, creditors were not paid in full, and there was no surplus that would otherwise be distributed to the Debtor.

*Conclusion*

Accordingly, for the foregoing reasons, the Court adopts the majority view and finds that an unsecured creditor is not entitled to include attorneys' fees, costs or similar charges incurred after the commencement of a bankruptcy case as part of an allowed unsecured claim. To find otherwise would impose unreasonable and potentially insurmountable burdens on the administration of bankruptcy cases.

Therefore, it is ORDERED:

1. The Debtor's Motion for Summary Judgment is granted, in part.

2. Post-petition attorneys' fees, costs, or other similar charges will not be allowed as part of any claim by Amwest in this case.

3. The Debtor's Motion for Summary Judgment is otherwise denied.

DONE AND ORDERED.